**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 11-26002 |
| HERITAGE POINTE VILLAGE | ) | Hon. John H. Squires |
| CONDOMINIUM ASSOCIATION, et al, | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Hearing Date: August 16, 2011 |
| | ) | Hearing Time: 9:30 a.m. |

TO: See Attached Service List

### AMENDED NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on **Tuesday, August 16, 2011 at 9:30 a.m.,** or as soon thereafter as counsel may be heard, I shall appear before the **Honorable John H. Squires**, Bankruptcy Judge, in Courtroom No. 680, U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois, or in his absence, before such other Judge who may be sitting in his place and stead and hearing bankruptcy motions, and shall then and there present the **Trustee's Motion for Authority to (I) Use Cash Collateral; and (II) Provide Adequate Protection, and for Related Relief**, a copy of which is attached and herewith served upon you, and shall pray for the entry of an order in conformity with the prayer of said pleading.

**AT WHICH TIME AND PLACE** you may appear if you so see fit.

                 Robert M. Fishman (#3124316)
                 John W. Guzzardo (#6283016)
                 Shaw Gussis Fishman Glantz
                  Wolfson & Towbin LLC
                 321 North Clark Street, Suite 800
                 Chicago, Illinois 60654
                 (312) 541-0151 telephone
                 (312) 980-3888 facsimile

### CERTIFICATE OF SERVICE

John Guzzardo, an attorney, certifies that he caused to be served a true copy of the above and foregoing notice and attached pleadings upon the attached Service List by the Bankruptcy Court's ECF notification system, on August 12, 2011.

                 */s/ John Guzzardo*

{10204-001 MOT A0297828.DOC}

**HERITAGE POINTE VILLAGE CONDOMINIUM ASSOCIATION.**
**ECF SERVICE LIST**

**Mailing Information for Case 11-26002**

# Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive e-mail notices for this case.

- Ira Bodenstein    iratrustee@shawgussis.com, IL29@ecfcbis.com
- Kenneth K Ditkowsky    kenditkowsky@yahoo.com
- Craig A Goode    cgoode@salawus.com
- Cameron M Gulden    USTPRegion11.es.ecf@usdoj.gov, cameron.m.gulden@usdoj.gov;USTPRegion11.es.ecf@usdoj.gov
- John W Guzzardo    jguzzardo@shawgussis.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- Diane J Silverberg    dsilverberg@ksnlaw.com

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 11-26002 |
| HERITAGE POINTE VILLAGE | ) | Hon. John H. Squires |
| CONDOMINIUM ASSOCIATION, et al, | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Hearing Date: August 16, 2011 |
| | ) | Hearing Time: 9:30 a.m. |

**TRUSTEE'S MOTION FOR AUTHORITY TO (I) USE CASH COLLATERAL AND (II) PROVIDE ADEQUATE PROTECTION, AND FOR RELATED RELIEF**

Pursuant to 11 U.S.C. §§ 361, 362, 363(c)(3), 363(e) and Fed. R. Bankr. P. 4001(b) and 4001(d), and Local Rule 4001-2, Ira Bodenstein, not individually, but solely in his capacity as chapter 11 trustee ("Trustee") for Heritage Pointe Village Condominium Association (the "Debtor"), requests the entry of an order in the form attached hereto (the "Cash Collateral Order") authorizing the Trustee to (i) use cash collateral on an interim basis and, after a final hearing ("Final Hearing"), on an extended basis to the extent necessary to operate the Debtor's business as a going concern and thereby maintain and preserve the Debtor's assets, and (ii) provide adequate protection to the Debtor's secured creditor U.S. Bank National Association, successor in interest to the Federal Deposit Insurance Corporation, Receiver for Park National Bank, successor by merger to Cosmopolitan Bank and Trust ("Bank"), on account of its alleged prepetition liens and security interests, all of the foregoing in accordance with the Cash Collateral Order and the budget attached to the Cash Collateral Order as Exhibit A (as may be modified with Bank's consent, the "Budget"). In support of this Motion, the Trustee states as follows:

{10204-001 MOT A0297828.DOC}   3

## I. FED. R. BANKR. P. 4001(b)(1)(B) and L.R. 4001-2 DISCLOSURES

1. The following disclosures are made pursuant to Fed. R. Bankr. P. 4001(b)(1)(B):

   (a) The only entity with an asserted interest in the subject cash collateral is the Bank, though the Trustee has not yet determined whether the alleged claim and lien interests held by the Bank are enforceable.

   (b) The Trustee requires the use of the Bank's purported cash collateral in order to continue the Debtor's business operations and to maintain and preserve the going concern value of the assets pending reorganization. Accordingly, and pursuant to 11 U.S.C. § 363(c)(2), the Trustee requests authority to use cash collateral in accordance with the provisions of the Cash Collateral Order and Budget to pay ongoing expenses incurred in the ordinary course of its business and ongoing expenses associated with the maintenance and preservation of the Debtor's assets. These expenses include, without limitation, payroll, employee related expenses, professional fees, maintenance costs, utilities, lease expenses, taxes, and insurance.

   (c) The Trustee's authority to use cash collateral is subject to compliance with the Budget, with a permitted variance of ten percent (10%) per expense line item without further order of this Court. The Budget may be modified with the prior written consent of the Bank or by order of the Court. The Trustee anticipates that the current Budget, which covers the months of August and September, 2011, may be extended by the time of the Final Hearing. The duration of the approved cash collateral use will consequently coincide with the term of the Budget as so extended.

   (d) Pursuant to 11 U.S.C. §§ 361 and 363(e), the Trustee requests authority to provisionally grant certain adequate protection to the Bank on account of its alleged prepetition liens and security interests by: (i) making provisional adequate protection payments as set forth in the Budget; (ii) granting the Bank a postpetition lien on the Debtor's receivables and assets (but excluding chapter 5 avoidance actions) to the same extent and in the same priority as its prepetition liens therein, subject only to prior perfected and unavoidable liens in property of the Debtor's estate as of the Petition Date; and (iii) providing the Bank with an allowed administrative claim against the Debtor's estate under section 507(b) of the Bankruptcy Code, to the extent that the replacement liens and adequate protection payments do not adequately protect the Bank from the diminution in the value of the Bank's interests in its collateral. The Trustee also requests authority to provide additional nonmonetary adequate protection to the Bank including rights to inspect the subject collateral, maintenance of and insurance for the collateral, and use of the collateral for lawful purposes, as more fully described herein.

2. The following disclosures of certain terms contained in the Cash Collateral Order are made pursuant to Local Bankruptcy Rule 4001-2(A)(2):

    a. **Cross Collateralization Other Than As Adequate Protection:** No.

    b. **Findings Regarding Validity, Perfection or Amount of Secured Creditor's Lien or Debt and Waiver of Claims Against Secured Creditor:** No.

    c. **Waiver of Rights Under Section 506(c)**: No.

    d. **Liens on Chapter 5 Causes of Action:** No.

    e. **Immediate Roll-Up of Prepetition Debt or Use of Postpetition Loans to Pay Prepetition Debt (Other Than Under § 552(b)):** No.

    f. **Different Treatment of Professionals and Limit on Committee's Use of Carve-Out:** No.

    g. **Priming of Secured Liens Without Consent:** No, the priority of prior liens is preserved to the extent that they are valid and enforceable.

    h. **Declaration Against Imposition of Lender Liability:** No.

    i. **Relief From The Automatic Stay on An Expedited Basis and/or Without Further Order of the Court:** No.

    j. **Provisions for Joint and Several Liability on Loans:** No.

3. Pursuant to Local Rule 4001-2(A)(3), and to the extent not otherwise described herein, the following is a summary of other essential provisions of the Trustee's proposed use of cash collateral pursuant to the Cash Collateral Order:

### The Maximum Borrowing On An Interim And Final Basis

a. This is not applicable to the Cash Collateral Order.

### The Interest Rate

b. This is not applicable to the Cash Collateral Order.

### Maturity

c. This is not applicable to the Cash Collateral Order.

### Events of Default

d. This is not applicable to the Cash Collateral Order.

### Use of Funds Limitations

e. Pursuant to paragraph 2 of the Cash Collateral Order, the Trustee is authorized to use cash collateral to fund expenses as set forth in the Budget. The Budget may be modified with the prior written consent of the Bank or by further order of the Court and is subject to a permitted variance of ten percent (10%) per expense line item without further order of the Court.

### Borrowing Conditions

f. The Trustee's use of cash collateral is conditioned upon the provision of adequate protection payments and the conferral of liens and adequate protection pursuant to and as described in paragraph 3 of the Cash Collateral Order.

### The Budget

g. The Budget is attached as Exhibit A to the proposed Cash Collateral Order. Pursuant to paragraph 2 of the Cash Collateral Order, the Budget may be modified with the prior written consent of the Bank or by further order of the Court and is subject to a permitted variance of ten percent (10%) per expense line item without further order of the Court.

### §§ 363 and 364 Protections

h. *See* ¶ 1(d) *supra*.

## II. FACTUAL BACKGROUND

**A. The Debtor's Chapter 11 Case**

4. On June 22, 2011 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code thereby commencing the above-captioned case (the "Case"). On July 19, 2011, the Bankruptcy Court approved the appointment of the Trustee. (*See* Docket No. 66.)

5. This Court has jurisdiction to hear this matter and enter a final order granting the relief requested herein pursuant to 28 U.S.C. §§ 1334 and 157(b)(2) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

6. Venue of this proceeding and Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A),(M), and/or (O).

7. The Debtor is a not for profit corporation established for the purpose of managing 154 buildings that contain condominium units. The condominiums are located in unincorporated Des Plaines, Illinois (the "Property"). The Debtor is managed by a board of directors, who consist of individuals that own one or more condominiums at the Property.

8. Also on the Petition Date, a related entity known as Forest Ridge Condominium Sub-Association ("Forest Ridge") filed for bankruptcy relief. (*See* Case No. 11-26003 (Bankr. N.D. Ill.) (the "Forest Ridge Case")). Forest Ridge contains approximately 378 condominium units and is sometimes referred to as the "Sub-Association."

9. The properties that comprise Forest Ridge and Heritage Village overlap and, collectively, represent approximately 924 condominium units. This Case and the Forest Ridge Case are subject to joint administration.

10. There are a myriad of legal issues surrounding the control of the Debtor and whether certain individuals had corporate authority to file the Case and the Forest Ridge Case.

**B.     The Debtor's Relationship with the Bank.**

11. On November 21, 2005, the Debtor entered into a secured note and assignment of assessments, as amended from time to time (collectively, the "Loan Agreement"), with the Bank to permit loan advances and other financial accommodations to the Debtor. The Debtor pledged substantially all of its assets, including the right to collect all existing and future assessments levied by the board on the unit owners, as security under the Loan Agreement. As of the Petition Date, the Debtor's balance under the Loan Agreement is approximately $347,617.30, as set forth in the Judgment Order for the Bank and against the Debtor, dated April 14, 2011, in the case

styled as *U.S. Bank National Association v. Heritage Village Pointe Condominium Association,* Case No. 2011 L. 000633 (Cir. Ct. Cook Cty.).

12. Subject to the terms of a proposed Cash Collateral Order and the Budget attached thereto, the Trustee seeks authority to use Bank's cash collateral. The Trustee intends to use the cash collateral to operate its business in the ordinary course and to facilitate the reorganization of its balance sheet and business.

### III. REQUESTED AUTHORITY TO USE CASH COLLATERAL

13. The Trustee seeks authority to use for an interim period proceeds from accounts receivable collections and other collateral pursuant to the Cash Collateral Order and to set this matter for a final hearing on the Trustee's request to use cash collateral.

14. The Bank asserts that under the Loan Agreement and related documents its claims against the Debtor are secured by a first priority, non-avoidable, perfected, valid and enforceable lien on and security interests in all or substantially all of the Debtor's assets ("Cash Collateral"). The Bank accordingly asserts that it holds non-avoidable, perfected, valid and enforceable security interests in the Debtor's "cash collateral" as that term is defined within the meaning of 11 U.S.C. § 363(a). Notwithstanding the Trustee's request for authority to use Cash Collateral, nothing contained in the interim Cash Collateral Order shall be deemed to constitute a determination of the validity, priority, perfection, enforceability, or unavoidability of the Bank's purported prepetition liens or interests, as the Trustee has not yet determined whether the Bank's alleged claim and lien interests are enforceable.

15. The Trustee requires use of the Cash Collateral in order to continue the Debtor's business operations and maintain and preserve the going concern value of its assets while it reorganizes. Pursuant to 11 U.S.C. § 363(c)(2), the Trustee accordingly requests authority to use Cash Collateral in accordance with the provisions of the Cash Collateral Order and Budget,

subject to a permitted variance of ten percent (10%) per line item, in order to pay ongoing expenses incurred in the ordinary course of business and ongoing expenses associated with the maintenance and preservation of the Debtor's assets.

16. Provided that the Trustee (i) complies with the provisions of the Cash Collateral Order and Budget, subject to permitted variances, and (ii) provides the adequate protection contemplated therein (and as discussed in greater detail below), this Court should authorize the Trustee's use of the Cash Collateral for expenditures in accordance with the Budget. The proposed use of Cash Collateral will adequately protect the security interests asserted by the Bank pending a final hearing by preserving and maintaining the value of the Debtor's business operations and the Cash Collateral. *See In re Addison Properties Ltd. P'ship*, 185 B.R. 766, 783 (Bankr. N.D. Ill. 1995) (collecting cases regarding use of cash collateral and determination of adequate protection).

17. The Trustee believes that (i) the terms and provisions of the Cash Collateral Order are fair and reasonable under the circumstances and reflect the most favorable terms upon which the Trustee could obtain the necessary use of Cash Collateral, and (ii) the Bank is entitled to the protections afforded under §§ 361 and 363(e) as more specifically described in paragraph 3 of the Cash Collateral Order.

18. Without the ability to use Cash Collateral to pay for expenses associated with the Debtor's postpetition operations and the maintenance and preservation of its assets pending a final hearing, the going concern value of those assets will deteriorate. Therefore, the Trustee requests interim authority to use Cash Collateral according to the Budget. Such interim use is necessary to avoid immediate and irreparable harm to the value of the Debtor's assets and its

estate pending a final hearing. Moreover, at a final hearing, the Trustee will request that the duration of the approved cash collateral use coincide with the term of the Budget.

## IV. ADEQUATE PROTECTION

19. Pursuant to 11 U.S.C. §§ 361 and 363(e), the Trustee requests authority to grant certain adequate protection to the Bank on account of its asserted prepetition liens and security interests by making provisional adequate protection payments (as provided in the Budget) and by granting the Bank replacement liens and additional nonmonetary protections. Moreover, to the extent that such adequate protection payments and replacement liens do not adequately protect the Bank from the diminution in the value of the Bank's interests in the Cash Collateral (valued as of the Petition Date), the Bank shall have an allowed administrative claim against the Debtor's estate under section 507(b) of the Bankruptcy Code.

20. As more specifically set forth in paragraph 5 of the Cash Collateral Order, the Trustee proposes granting the Bank replacement liens and security interests on all existing and hereafter acquired assets of the Debtor (excluding chapter 5 causes of action) to the same priority, validity and extent that Bank's interest in the Cash Collateral existed as of the Petition Date, which adequate protection liens will be subject to any other valid, enforceable and unavoidable existing liens on the Debtor's assets.

21. The Trustee also proposes additional nonmonetary adequate protection to the Bank as follows:

    (a)    Providing reasonable access to the Debtor's (i) premises for the purpose of inspecting Bank's collateral and (ii) books and records;

    (b)    Maintaining and keeping the Bank's collateral in good condition, repair and working order (normal wear and tear excepted), unless such collateral is not necessary for the Debtor's business operations and reorganization efforts as determined in the Trustee's business judgment;

      (c)      Maintaining insurance existing as of the Petition Date with respect to the business and collateral; and

      (d)      Using the collateral for lawful purposes, without violation of any federal, state or local law, statute or ordinance.

22. Moreover, the Trustee proposes to make provisional adequate protection payments to the Bank on a monthly basis, with the first of such payments to be made during the week beginning August 21, 2011 as set forth in the Budget. The Trustee proposes making provisional payments to the Bank in the amount of $5000.00 for the month of August for use of the Bank's Cash Collateral. The Trustee has also budgeted for the payment of insurance.

23. The Trustee's proposed use of Cash Collateral in accordance with the Budget is, in the Trustee's judgment, sufficient to satisfy his cash needs in order to maintain and preserve the value of the Debtor's assets while it reorganizes. The Trustee proposes that, unless the Court otherwise orders, the Court's authorization for the Trustee to use Cash Collateral will terminate on the date that an order is entered concluding the final hearing on this Motion.

### Notice

24. Notice of this Application has been given to the Office of the United States Trustee, counsel for the Bank, and all other parties requesting notice in this Case. In light of the nature of the relief requested, the Trustee submits that no further notice is required.

### VII. CONCLUSION

WHEREFORE, pursuant to 11 U.S.C. §§ 361, 362, 363(c)(2), 363(e), Fed. R. Bankr. P. 4001(b) and 4001(d), and Local Rule 4001-2, the Trustee requests the entry of interim and final orders approving this Motion, and specifically: (i) authorizing the Trustee to use the Bank's Cash Collateral on an interim basis in accordance with the terms of the Cash Collateral Order pending a final hearing on this Motion; (ii) authorizing the Trustee to use the Bank's Cash Collateral on a final basis on substantially the same terms as the Cash Collateral Order; (iii) scheduling a final

hearing on this Motion during the week beginning August 29, 2011; (iv) authorizing the Trustee to provide adequate protection in favor of the Bank in the manner and to the extent described herein; and (v) granting such other and further relief as is just and to which the Trustee may be entitled under the circumstances.

        Respectfully submitted,

        Ira Bodenstein, not individually but solely in his capacity as the chapter 11 trustee of the Debtor's estate

Dated: August 12, 2011        By: */s/ Robert M. Fishman*
                                               One of his attorneys

Robert M. Fishman
John Guzzardo
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
(312) 541-0151 phone

{10204-001 MOT A0297828.DOC}    12