UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 11-26002 |
| HERITAGE VILLAGE POINTE | ) | Hon. Jacqueline P. Cox |
| CONDOMINIUM ASSOCIATION, *et al.*, | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL
AND GRANTING ADEQUATE PROTECTION**

Upon consideration of the motion (the "Motion") of Ira Bodenstein, not individually, but solely in his capacity as chapter 11 trustee ("Trustee") for Heritage Village Pointe Condominium Association (the "Debtor"), requesting this Court's authorization to use the cash collateral of U.S. Bank National Association, successor in interest to the Federal Deposit Insurance Corporation, Receiver for Park National Bank, successor by merger to Cosmopolitan Bank and Trust ("Bank"), pursuant to 11 U.S.C. § 363(c)(2) and Fed. R. Bankr. P. 4001; due and proper notice of the Motion having been given to all parties entitled thereto; multiple preliminary hearings having been held on the Motion pursuant to the provisions of Fed. R. Bankr. P. 4001(c)(2); the Court having heard the statements of counsel for the Trustee and the Bank at the interim hearings; the Court having previously entered interim orders on August 16, 2011, September 7, 2011, October 18, 2011; October 27, 2011; November 29, 2011; January 10, 2012; January 27, 2012; February 28, 2012; and March 27, 2012, the Court having considered all relevant matters related thereto and being otherwise fully advised in the premises; and it appearing to the Court as follows based on the representations of counsel at the hearing and in the Motion:

{10204-001 ORD A0319018.DOC}

A. On June 22, 2011 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned case (the "Case"). On July 19, 2011, the Bankruptcy Court approved the appointment of the Trustee.

B. On August 16, 2011, this Court entered the Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection (Docket No. 91).

C. On September 7, 2011, this Court entered the Second Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection (Docket No. 115). Subsequent Orders were entered on October 18, 2011 (Docket No. 164), October 27, 2011 (Docket No. 170), November 29, 2011 (Docket No. 180), January 10, 2012 (Docket No. 202), January 27, 2012 (Docket No. 214), February 28, 2012 [Docket No. 223), and March 27, 2012 (Docket no. 229) (collectively, the "Interim Orders").

D. The Court has jurisdiction over this Case pursuant to 28 U.S.C. §1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

E. On November 21, 2005, the Debtor entered into a secured note and assignment of assessments, as amended on July 28, 2008 and August 1, 2009 (collectively, the "Loan Agreement"), with the Bank to permit loan advances and other financial accommodations to the Debtor. The Debtor pledged substantially all of its assets, including the right to collect all existing and future assessments levied by the board on the unit owners, as security under the Loan Agreement. As of the Petition Date, the Bank alleges that the Debtor's balance under the Loan Agreement is approximately $347,617.30, as set forth in the Judgment Order for the Bank and against the Debtor, dated April 14, 2011, in the case styled as *U.S. Bank National Association v. Heritage Village Pointe Condominium Association,* Case No. 2011 L 000633 (Cir. Ct. Cook Cty.).

F.  The Bank asserts that cash in the possession of the Trustee represents proceeds of collections of assessments of the Debtor, along with the existing accounts receivable of the Debtor as of the Petition Date, and represents cash collateral which the Bank claims is subject to its liens and security interest (the "Cash Collateral").

G.  The Trustee has requested that the Bank consent to the use of the Cash Collateral in order to provide funds to be used in the operation of the Debtor's business.

H.  The Trustee has made multiple adequate protection payments to the Bank pursuant to the terms of the Interim Orders, which, in addition to payments made pre-petition, have reduced the outstanding indebtedness to $260,266.75.

I.  Subject to the terms and conditions set forth in the Promissory Note attached hereto as Exhibit A (the "Note"), the Bank consents to entry of this order (the "Final Order") authorizing the Trustee's use of Cash Collateral to continue the Debtor's business operations and to maintain and preserve the going concern value of its assets while it reorganizes. The Bank consents to the use of the Cash Collateral in accordance with the provisions of Exhibit A.

J.  This Final Order is entered pursuant to, and shall be construed and be consistent with §363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) to prevent immediate and irreparable harm to the Debtor's estate.

K.  The Bank has acted in good faith in consenting to the use of the Cash Collateral.

L.  The notice provided by the Trustee of the Motion, the hearing on the Motion, and the entry of this Final Order satisfies the requirements of Bankruptcy Rule 4001(b) and is otherwise sufficient and appropriate under the circumstances.

IT IS HEREBY ORDERED:

1. The Motion is hereby granted on a final basis and the Trustee is entitled to use Cash Collateral pursuant to §363(c) of the Bankruptcy Code subject to the terms and conditions set forth in this Final Order and the Note.

2. The Trustee is authorized, solely and in accordance with the terms of this Final Order, to enter into the Note and use the Cash Collateral consistent with the terms of the Final Order and the Note.

3. Pursuant to 11 U.S.C. §§ 361 and 363(e), the Bank is granted adequate protection of its asserted prepetition liens and security interests by the Debtor entering into the Note and by the granting of replacement liens and additional nonmonetary protections. Moreover, to the extent the replacement liens do not adequately protect the Bank from the diminution in the value of the Bank's interests in the Cash Collateral (valued as of the Petition Date), the Bank shall have an allowed administrative claim against the Debtor's estate under section 507(b) of the Bankruptcy Code.

4. The Bank is hereby granted a replacement lien and security interest on all existing and hereafter acquired assets of the Debtor, excluding chapter 5 causes of action (the "Assets"), to the same priority, validity and extent that the Bank's interest in the Assets existed as of the Petition Date, which adequate protection lien will be subject to any other valid, enforceable and unavoidable existing lien on the Assets. Such replacement lien shall be retroactive to the Petition Date (without the necessity of any additional documentation or filing, although the Bank may cause an appropriate UCC-1 to be filed if it chooses to do so), valid, enforceable, non-avoidable, and fully perfected liens of the highest available priority upon (i) any property that the Trustee acquires after the Petition Date including, without limitation, any assessments collected or

accounts receivable generated by the Debtor's postpetition operations, and (ii) any proceeds generated from such property.

5.  In addition to the Debtor entering into the Note with the Bank and the replacement lien previously described, as adequate protection for any use or diminution in the value of the Bank's interest in the Debtor's Cash Collateral, the Bank is hereby granted as additional adequate protection:

> (a) The Bank shall have reasonable access to the Debtor's (i) premises for the purpose of inspecting the Bank's collateral and (ii) books and records.
>
> (b) The Trustee shall maintain and keep the Bank's collateral in good condition, repair and working order (normal wear and tear excepted), unless such collateral is not necessary for the Debtor's business operations and reorganization efforts, as determined in the Trustee's business judgment.
>
> (c) The Trustee shall maintain all insurance that existed as of the Petition Date with respect to the Debtor's business and the Bank's collateral.
>
> (d) The Trustee shall only use the collateral for lawful purposes, without violation of any federal, state or local law, statute or ordinance.

6.  The liens granted in the preceding paragraphs (the "Adequate Protection Liens") shall be subject only to prior perfected and unavoidable liens in property of the Debtor's estate as of the Petition Date.

7.  The "Confession of Judgment" provision contained in the Note will only become effective thirty (30) days after an order confirming a plan of reorganization respecting the Debtor becomes final and non-appealable. Prior to such time, said provision is of no force or effect.

8.  This Final Order shall be sufficient and conclusive evidence of the validity, enforceability and perfection of the Adequate Protection Liens, whether or not the Bank elects to file or record financing statements, any other documents, or to take such other steps as may otherwise be required to obtain, evidence or perfect such liens under applicable law; and the

Bank may, in its sole discretion, but shall not be required to, file a certified copy of this Final Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property, and such filing or recording shall be accepted and shall constitute further evidence of perfection of its liens and security interests.

9. In the event of any conflict between the terms of this Final Order and the terms of the Note, the terms of this Final Order shall control.

10. The entry of this Final Order is without prejudice to the Trustee's right to seek authority to use additional cash collateral or borrow funds pursuant to 11 U.S.C. § 364 if the Trustee determines that the cash collateral use authorized by this Final Order is insufficient. Nothing contained in this Final Order, however, shall constitute the Bank's consent to be primed by any subsequent lender.

ENTER:

Dated: JUN 13 2012

_____
United States Bankruptcy Judge

*Prepared By:*
Ira Bodenstein (#3126857)
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
(312) 541-0151 telephone
(312) 980-3888 facsimile
*Counsel for Ira Bodenstein, not individually, but solely as the chapter 11 trustee of Heritage Village Pointe Condominium Association*

# EXHIBIT A

# PROMISSORY NOTE

Borrower:   Heritage Village Pointe Condominium Association     Lender: US Bank National Association
            10018 Holly Lane                                             11 West Madison Street
            Des Plaines, IL 60016                                        Oak Park, Illinois 60302

Principal Amount: $260,266.75                        Date of Note: June 1, 2012

PROMISE TO PAY. Heritage Village Pointe Condominium Association ("Borrower") promises to pay to US Bank National Association ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Sixty Thousand Two Hundred Sixty-six & 75/100 Dollars ($260,266.75), together with interest on the unpaid principal balance from June 1, 2012, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of the U.S. Bank Prime Rate plus 1.00% per annum, with such rate, in any event, not to fall below 5.00% per annum, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

PAYMENT. Borrower will pay this loan in forty-five (45) monthly payments as follows: (1) From the date hereof through and including May 31, 2013, the monthly payment shall be comprised of a $5,500.00 payment of principal plus a payment of interest to be calculated monthly payable on or before the 1st of each month beginning on July 1, 2012; (2) From June 1, 2013 through and including May 31, 2014, the monthly payment shall be comprised of a $5,900.00 payment of principal plus a payment of interest to be calculated monthly payable on or before the 1st of each month; and (3) From June 1, 2014 through and including the Maturity Date, the monthly payment shall be comprised of a $6,300.00 payment of principal plus a payment of interest to be calculated monthly payable on or before the 1st of each month.

Borrower's first payment is due July 1, 2012, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on March 1, 2016, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in advance in writing.

INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

PREPAYMENT. Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making few payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" or the amount owed or that is tendered with

{000 MSC A0319442.DOC}

other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Glenn E. Debs; US Bank; 11 West Madison Street; Oak Park, Illinois 60302.

LATE CHARGE. If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $10.00, whichever is greater.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the interest rate currently in effect on this Note shall immediately double, with such default interest rate subject to a minimum default interest rate of 10.00% per annum. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

FINANCIAL REPORTING. Borrower agrees to submit to Lender any and all financial statements that are prepared by Borrower when requested by Lender, but in no event less than once a year during the term of this Note.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note:

> Payment Default. Borrower fails to make any payment when due under this Note.
>
> Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or that certain Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection entered in the case of *In re: Heritage Village Pointe Condominium Association, et al.*, 11-26002, pending in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Order").
>
> Default in Favor of Third Parties. Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement in favor of any other creditor or person that may reasonably and materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or the Order.
>
> False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower under this Note or the Order that is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.
>
> Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender reasonably believes the prospect of payment or performance of this Note is impaired.
>
> Insecurity. Lender in good faith reasonably believes itself insecure.
>
> Real Estate Taxes. Borrower fails to pay any installment of real estate taxes when due.
>
> Cure Provisions. If Lender declares any default of any provision of this Note or the Order, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than

fifteen (15) days, immediately initiates steps which Lender deems in Lender's reasonable discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

LENDER'S RIGHTS. Upon default, and after expiration of all applicable notice and cure rights, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lenders' legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Illinois.

CHOICE OF VENUE. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of COOK County, State of Illinois.

CONFESSION OF JUDGMENT. Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against it for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full. Borrower hereby waives and releases any and all claims or causes of action which Borrower might have against any attorney acting under the terms of authority which Borrower has granted herein arising out of or connected with the confession of judgment hereunder.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

{000 MSC A0319442.DOC}

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorized Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

COLLATERAL. Borrower acknowledges this Note is secured by a first lien security interest in all existing and future assessments and all general business assets of Heritage Village Pointe Condominium Association pursuant to the Order.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

GENERAL PROVISIONS. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral: or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

CONFLICTS. In the event of any conflict between the terms of this Note and the Order, the Order controls.

ILLINOIS INSURANCE NOTICE. In the event that Lender demands evidence of insurance from Borrower and Borrower fails to provide Lender with evidence of insurance coverage, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained applicable insurance. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to

Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

BORROWER:

HERITAGE VILLAGE POINTE CONDOMINIUM ASSOCIATION

By:_____
    Ira Bodenstein, not individually but
    Solely as the chapter 11 trustee